# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

gr-419.com.1

| | |
|---|---|
| **SANDRA E. TORRES LÓPEZ, ESQ.** | |
| **PLAINTIFF** | **CIVIL NO:** |
| **V.** | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| **RAMÓN M. MENDOZA, ESQ., LETICIA PABÓN, ESQ. & EXEL JOEL LÓPEZ** | |
| **DEFENDANTS** | |

## COMPLAINT

**TO THE COURT:**

**COMES NOW PLAINTIFF** through the subscribing **ATTORNEY**, who very respectfully alleges and prays:

1. This is an action for money damages, for the violation of the constitutional rights of the Plaintiff by Defendants under the constitution and Laws of the United States of America and the Commonwealth of Puerto Rico, and for damages, for injuries caused to Plaintiff due to the intentional and/or grossly negligent acts of the Defendants.

## JURISDICTION

2. This is an action brought pursuant to 42 U.S.C. 1983 and 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is

1

founded upon 28 U.S.C. 1331 and 1343, and the aforementioned statutory and constitutional provisions.  Further Plaintiff invokes the supplementary jurisdiction of the Court to hear and decide claims arising under the Laws of the Commonwealth of Puerto Rico, because the claims all arise from the same acts and or occurrences and share a common nucleus of operative facts.

## PARTIES

3.  Plaintiff, **SANDRA E. TORRES LÓPEZ** (**SETL**), was at all times relevant to this complaint, a resident of the Commonwealth of Puerto Rico and the **President** of the **Telecommunications Regulatory Board** of the **Commonwealth of Puerto Rico**, having been appointed as such, as of the year **2009** until the year **2013** and once again appointed as such by the **Honorable Governor** then, **Ricardo Roselló Nevárez**, for an appointment of four (4) years, from the year **2017** through the year **2021**.

4.  Defendant, **RAMÓN M. MENDOZA** (**Special Prosecutor**), was at all times relevant to this complaint, one the **Prosecutors** who investigated the plaintiff, appointed as a **Special Prosecutor** of the **Panel of the Independent Special Prosecutor** (**Panel del Fiscal Especial Independiente**).

5.  Defendant, **LETICIA PABÓN** (**Special Prosecutor**), was at all times relevant to this complaint, one the **Prosecutors** who investigated the

2

plaintiff, appointed as a **Special Prosecutor** of the **Panel of the Independent Special Prosecutor** (**Panel del Fiscal Especial Independiente**) (**Panel**).

6.  Defendant, **EXEL JOEL LÓPEZ** (**EJL**), was at all times relevant to this complaint, having on **16 January 2018** been appointed by **SETL**, as her **Special Assistant of the Telecommunications Regulatory Board** of the **Commonwealth of Puerto Rico** (**Board**).  **EJL**'s job description was that of being in charge of the **Board's** internet social media, being these **Facebook**, **Twitter** and **Instagram**.

7.  At all times relevant hereto and as in the actions described herein below, the defendants were the sole responsible for the plaintiff's indictment, as later herein will be described.

8.  The above mentioned two **Special Prosecutors**, were appointed in the case at bar, to investigate **SETL**.  The first referred to had the lead way to grant immunity to which ever witnesses they would deem proper.  The **Special Prosecutors**, were experienced **Attorneys**, for both of them had been **Assistant District Attorneys** of the **Department of Justice of the Commonwealth of Puerto Rico**, before being appointed to investigate **SETL**.

9.  The above captioned complaint is not motivated by personal animosity or

dissatisfaction with the mere fact of having been the subject of a criminal investigation. Quite to the contrary, it stems from the conviction that the integrity of the justice system demands that every member of the legal profession, and even more so those vested with the sensitive powers and prerogatives of the public prosecutor's office, act with strict adherence to the truth, investigative diligence, procedural integrity, and the ministerial duty to ensure that justice be served.

10. Special Independent Prosecutors (**FEI**) occupy a position of extraordinary responsibility within our legal system. They are delegated investigative and procedural powers that directly affect the freedom, reputation, and professional lives of the citizens under investigation. Precisely for this reason, the exercise of these functions demands a particularly high degree of prudence, objectivity, professional competence, and fidelity to the ethical principles that govern the legal profession.

11. The facts set forth below reveal a pattern of actions and omissions inconsistent with the ethical duties governing the prosecutorial function and the practice of law in Puerto Rico. In particular, the captioned complaint is based on actions related to: (a) the failure to investigate and corroborate significant exculpatory evidence, (b) the tolerance of materially inconsistent or false testimony, (c) breaches related to the duty of disclosure and

discovery in criminal matters, (d) actions inconsistent with the duty of truthfulness and honesty before the courts, (e) improper procedural delays in the handling of a criminal case, and (f) proposing, as part of a settlement negotiation, the withdrawal of a pending grievance before the Supreme Court against the respondent, in exchange for a guilty plea, which was rejected by **SETL**.

12.    With regard to the figure of the **Independent Special Prosecutor** (**FEI**), it is believed to be essential that any allegation of improper professional conduct by officials or lawyers who perform such a delicate function must be carefully examined in order to safeguard public confidence in the administration of justice and in the integrity of the legal profession.

13.    After an extensive and emotionally painful, onerous, draining, exhausting, and agonizing investigative and judicial process that lasted for approximately **five (5) years**, could very well have chosen to remain silent. However, her duty of conscience, her commitment to the legal profession, and her conviction regarding the importance of preserving the purity and integrity of judicial processes morally and professionally compel **SETL** to bring the above captioned cause of action.

## SETL's PROFILE

14.    **SETL** holds a **Bachelor of Arts** degree with a concentration in **Sociology**,

5

graduating **Cum Laude** from the **University of Puerto Rico**.

15. A **Juris Doctor** degree in **1979** from the **Inter-American University of Puerto Rico School of Law**. That same year, she was admitted to the bar and notary public in the jurisdiction of the Commonwealth of Puerto Rico. She is also admitted to the U.S. District Court for the District of Puerto Rico and to the United States Court of Appeals for the First Circuit.

16. She served as a Municipal Judge from 1983 to 1984. From 1983 to 1986, she was a part-time university professor for the University of Puerto Rico Extension Program, where she taught courses in paralegal studies, criminal justice, and other areas. She worked for the **Puerto Rico Telephone Company** for **thirty (30) years**, starting as a legal officer and escalating to the positions of **Director of Legal Affairs**, **Director of Regulatory Affairs**, and **Director of Labor Affairs**.

17. As an Attorney **SETL** was an active member of the Puerto Rico Bar Association, where she served and chaired several committees. She has served on the Board of Directors of Hogar del Niño, on the Board of Trustees of Atlantic University, and until 2017 held the position of President of the Board of Directors of Found Care International (FIC) Puerto Rico, a community-based organization that provides primary health services, and education and prevention services to individuals with high-

risk behaviors and who are socially disadvantaged.

18. In 2009, she was appointed **President** of the **Telecommunications Regulatory Board**, now the **Telecommunications Bureau**, a position she held until 2013. She has served on the **Broadband Task Force**, where she was responsible for preparing the **Broadband Strategic Plan** submitted to the **Federal Communications Commission**. She has also served as Chair of the Interagency Committee for Intelligence against metal theft.

19. In **2017** she was again appointed to the position of **President** of the **Telecommunications Regulatory Board**, now the **Telecommunications Bureau**, a position she held until **2021**.

20. In **February 2019**, **SETL** was confirmed by the Puerto Rico Senate as Executive Director of the Office for the Administration and Transformation of Human Resources of Puerto Rico. There, she served as the principal officer for the implementation and execution of the Law for the Administration and Transformation of Human Resources of the Government of Puerto Rico  (Law No. 8 of February 4, 2017, as amended). In April of that same year, she was appointed to the Transition Committee for the transformation of the Puerto Rico Public Broadcasting Corporation (WIPR). A month later, she was appointed to the Executive Security Committee of the Puerto Rico Department of Public Safety.

21.    **SETL**'s professional career has been primarily in the fields of telecommunications and labor relations, serving in legal, regulatory and administrative. Throughout her career, she has delivered numerous lectures in these fields and has served **pro bono** as a speaker at a multitude of forums and symposia within the telecommunications and infrastructure industry.

22.    **SETL** has practiced law for over four decades in various public and private sectors, including the judiciary, corporate practice, university teaching, and high-level public administration. Throughout her professional career, she had never been the subject of ethical reprimands, disciplinary investigations or accusations of misconduct in any forum until the events that have prompted the above captioned complaint.

23.    Prior to the matter at hand and the complaint arising therefrom, which was dismissed by the Supreme Court of Puerto Rico, never in her forty-one (41) years of legal practice had she been subject to the jurisdiction of the Supreme Court of Puerto Rico. Nor has she ever been the subject of any ethical or other type of investigation by the Executive Branch, nor had she been the subject of any ethical or other type of investigation by the Legislative Branch. **Nor had she** been the subject of any criminal or quasi-criminal investigation, **except for those unwarranted investigations**

that took place as part of the matter filed by **EJL**.

## RELEVANT FACTS

24. The events that prompted this complaint arose within the purview of the Office of the Independent Prosecutor. As is widely known, this government entity was created by virtue of Law No. 2 of February 23, 1988, as amended. The purpose of this entity is to investigate and criminally prosecute government officials covered by the law who engage in criminal conduct. Pursuant to this law, the position of Panel of Special Independent Prosecutor was created, which will be composed of former judges of the Puerto Rico judicial system, appointed by the governor with the advice and consent of the Senate of Puerto Rico. The members of the Panel, in turn, will have the power, in appropriate cases, to appoint an attorney to serve as Special Independent Prosecutor to investigate and prosecute officials or former officials for crimes committed while in office.

25. Regarding the Independent Special Prosecutor, Law No. 2 of 1988, in its Article 12, establishes the requirements that those appointed must meet, such as being attorneys admitted to practice law by the Supreme Court of Puerto Rico, being a citizen of the United States, and a **bona fide citizen and resident** of Puerto Rico, among others. Article 12(3) establishes that special prosecutors shall have, with respect to the matters entrusted to them

and within their jurisdiction, all the powers and faculties of the Department of Justice, the director of the Bureau of Special Investigations, and any other official to whom the law grants the authority to investigate and prosecute violations of criminal law. Among these powers, they are also granted the authority to **grant immunity** as they deem necessary to witnesses in criminal, civil, or administrative cases for the fulfillment of their duties in accordance with the law.

26. The defendants, Ramón Mendoza Rosario and Leticia Pabón Ortiz, are attorneys in private practice who were hired by the Special Independent Prosecutor's Panel (PFEI). These two attorneys are familiar with the workings of the Puerto Rico Department of Justice and have extensive experience in the field. Attorney Ramón Mendoza Rosario offers bar exam preparation courses for aspiring lawyers. Furthermore, during his time as a contractor for the PFEI, he has also served as legal counsel for the Puerto Rico Electric Power Authority (PREPA). They are attorneys with many years of experience.

27. As previously stated, the complainant herein is a lawyer and notary and was nominated by the then Governor of Puerto Rico, Honorable Ricardo Rosselló Nevárez, and confirmed by the Senate of Puerto Rico to occupy the position of President of the Puerto Rico Telecommunications

10

Regulatory Board in 2017, for a term of four (4) years.

28.    **EJL** was recruited and appointed on **16 January 2018**, to occupy the position in the trust service of Special Assistant, reporting to the plaintiff.

29.    **EJL** main functions consisted of managing the official social media accounts of the Telecommunications Regulatory Board , now the Telecommunications Bureau, such as Facebook, Twitter and Instagram.

30.    By 5 February 2019, barely one (1) year after starting work as a Special Assistant, the plaintiff was forced to deliver a written warning to **EJL** regarding his attendance issues. He was warned that he was clocking in after his scheduled start time, working incomplete shifts of less than seven and a half hours daily, without receiving the corresponding pay deductions, approving attendance without uploading the required leave, having excessive absences, and leaving work during working hours in his personal vehicle without notifying or providing an excuse.  On 1 March 2019, **EJL** sent a communication to Mr. Emanuel Nazario Ramírez, then Director of the Administrative Services Division of the Telecommunications Bureau, requesting that arrangements be made to change the passwords for the Bureau's official social media accounts so that he would no longer have access to them. On that same date, the Telecommunications Bureau proceeded with the changing of the passwords, so that **EJL** would not have

access to them.

31.    On March 7, 2019, while **EJL** was on administrative assignment to the Public Service Regulatory Board , he sent a written communication to the presidents of the Energy Bureau, the Transportation Bureau, and the Telecommunications Bureau, informing them that he would be in charge of all official accounts for all the bureaus and requesting the passwords to access the accounts. He copied Ms. Denise Pérez, then press director for the Governor's Office, on that communication. That same day, Ms. Pérez disavowed **EJL** and questioned him about who he had consulted regarding the content of his communication.

32.    On September 11, 2019, **EJL**, without any authorization and having changed the passwords of the Telecommunications Bureau at his request, accessed the official Facebook account, took control of it, and assumed the role of administrator.

33.    Once the complainant was informed of this action, as president and administrator of the Agency, **SETL** activated the protocol, following Administrative Policy P-2016-01. The corresponding investigation was carried out and the immediate supervisor for whom **EJL** worked on administrative assignment was notified.

34.    Once the investigation was completed, the Agency's Policy was followed

and on **September 17, 2019**, the Hoare Police Station was called.

35.    Agent Grace Villanueva, Badge No. 37032, and Agent Rosario, Badge No. 33797, appeared at the facilities of the Telecommunications Bureau.

36.    On that same day, **September 17, 2019**, Agent Grace Villanueva returned to the Telecommunications Bureau and reported that she went to the Puerto Rico Police Headquarters and gave the plaintiff her business card with her name and the police complaint number, 2019-1-266-6376, for computer hacking against **EJL**.

37.    A copy of the aforementioned complaint was subsequently obtained.

38.    While the police complaint was pending, on **October 18, 2019**, **EJL** filed a complaint against the plaintiff with the Supreme Court of Puerto Rico, Complaint No. AB-2019-230. That same day, a copy of said complaint was filed by **EJL** with the Office of the Secretary of the Governor.  On October 21, 2019, the same complaint was filed with the Office of Government Ethics.

39.    In summary, he alleged that in **May** and **June of 2018**, the plaintiff had called him, at his office and ordered him to sell tickets for a fund-raising event for Governor Ricardo Rosselló's reelection campaign, and that he refused. He stated that the following day she told him that if did not comply, she would have to terminate his employment, and that in his

13

presence, the plaintiff proceeded to call Mr. Enrique Ortiz, president of Claro, and told him that he "had to set up two ticket booths." **EJL** alleges that the plaintiff did the same with Mr. Ray Flores, then general manager of AT&T Puerto Rico.

40.    The complaint was investigated by the Office of Government Ethics.

41.    On **June 19, 2020**, Attorney Carlos Capó and Attorney Nimia Salabarría Belardo, in a communication addressed to the executive director Luis Pérez Vargas, submitted the report on the outcome of the investigation related to the plaintiff, case number: 2020-IP-0062.

42.    The report indicated that, based on the investigation conducted by said office, the **EJL**'s allegations were not supported by the evidence and that **EJL** provided false and incorrect information under oath.

43.    On **July 3, 2020**, the executive director, Attorney Luis Pérez Vargas, sent a communication to the then Secretary of the Department of Justice, Denise N. Longo, referring that **EJL** to be investigated by said Department for having lied under oath.

44.    Both the report on the outcome of the investigation, dated June 19, 2020, and the referral to **EJL** to the Secretary of the Department of Justice were sent to the **PFEI** office, and both the Panel and the prosecutors Ramón Mendoza Rosario and Leticia Pabón had access to them prior to the filing of

criminal charges against the plaintiff.

45.    On **November 21, 2019**, the Secretary of the Governor's Office at that time, **Attorney Zoé Laboy Alvarado**, sent to the Department of Justice the complaint filed by **EJL**.

46.    On December 6, 2019, the Department of Justice took a statement from Excel Joel López Vélez. (Annex 12)

47.    On **January 21, 2020**, the PFEI issued a Resolution and Order granting the Department of Justice a 90-day term to carry out the preliminary investigation.

48.    During the investigative stage, already aware of the content of the communication sent by the Office of Government Ethics to the Department of Justice and the Department of Justice to the PFEI, dated July 3, 2020, the contracting prosecutors, Ramón Mendoza Rosario and Leticia Pabón Ortiz, recommended to the PFEI to grant immunity to **EJL** and Katherine Erazo García.

49.    The then-president of the PFEI, Attorney Nidia Cotto Vives (RIP), stated during a media tour that it was necessary to grant the prosecutors additional time to continue the investigation because they were reportedly going to interview two witnesses who had information to offer and were not in Puerto Rico, they would be coming to be interviewed.

50. Prior to the filing of criminal charges, the legal representative of the captioned plaintiff, after a meeting with the contracted prosecutors, on **November 23, 2020**, proceeded to send a letter addressed to defendants, **Ramón Mendoza Rosario** and **Leticia Pabón Ortiz**, accompanied by several attachments that clearly demonstrated **EJL** motivations for filing his complaint before the Supreme Court of Puerto Rico, La Fortaleza, and the Office of Government Ethics.

51. The documents accompanying the aforementioned letter were the same documents used in response to the complaint filed against the plaintiff, before the Supreme Court. As can be seen, they had the opportunity to investigate, and inquire deeper before recommending the filing of charges. As we will herein below further describe, neither at that time nor subsequently did either prosecutor exercise their duty of diligence and responsibility in seeking the truth, as is required by every member of the legal profession. Had they conducted the investigation with due diligence, the outcome would have been certainly different.

52. Among the numerous incidents that occurred during discovery, the defendant prosecutors objected to the release of certain documents and the names of alleged witnesses, who called claiming to have information to offer and who would come to Puerto Rico to be interviewed. These issues

prompted the plaintiff to appeal to the Puerto Rico Court of Appeals twice.

53. The names of the alleged individuals were determined by the Court of Appeals to be irrelevant and not subject to disclosure to the defense. However, in violation of the Court of Appeal's ruling and their duty of competence, the prosecutors disclosed and provided this information to the defense.

54. After the proceedings before the Court of Appeals concluded and the Supreme Court declined to hear the appeal filed by the Special Independent Prosecutor's Panel (**PFEI**), discovery continued. Among the documents turned over, was the sworn statement taken by the Department of Justice on December 6, 2019, from witness **EJL**.

55. In said sworn statement, Prosecutor Teresita Del Rosario Morales asked Mr. **EJL**, if he remembered the date in which Attorney **SETL** gave him the list. **EJL** answered: "I understand it was **May 17, 2018**." Further in the statement, **EJL**, in response to questions from the prosecutor about when he spoke again about the matter of the ticket list with Attorney **SETL**, Mr. **EJL** stated: " That same day, **May 17, 2018**, in the evening, I contacted the attorney **(SETL)** and told her that I was not going to collaborate in that activity."

56. The witness with immunity, **EJL**, mentions that the plaintiff had gathered

17

him in her office, at the facilities of the Telecommunications Regulatory Board and had ordered him to sell tickets for the fund-raising activity and, as referred to from his sworn statement, on two occasions he mentions the date of **May 17, 2018**.

57. The legal representative of the plaintiff filed a motion with the Court under Rule 65 of the Rules of Criminal Procedure, as amended. The documents included in said motion, consisting of travel authorization, travel itinerary, tickets, hotel where the plaintiff stayed, program of the activity, and photographs, demonstrated that on **May 14, 2018**, she departed San Juan, Puerto Rico, at 9:00 AM, with a layover in Fort Lauderdale. That from Fort Lauderdale **SETL** departed for Mexico, arriving in Mexico at 4:10 PM. That she stayed at the Sheraton María Isabel Hotel, Mexico City, from Monday, **May 14, 2018**, until Thursday, **May 17, 2018**. Having attended as an invited speaker for the Fifth Edition of the LATSAT Congress, which took place on **May 15** and **16, 2018**, at the facilities of the Old Post Office Museum. That on **May 17, 2018**, **SETL** left Mexico City at 11:20 AM, having I arrived in Miami at 3:30 PM, and having left Miami at 6:15 PM, arriving at the airport in San Juan at 8:52 PM. These documents proved that on the date the witness, with immunity, alleged that the plaintiff met with them in her office and gave him the alleged list, **SETL** was not in Puerto

Rico.

58.   The prosecutors had the opportunity to investigate, to call the hotel, because they were provided with information including phone numbers and travel itineraries. Instead of investigating and confronting their witness with immunity, **EJL**, with the evidence accompanying the motion under Rule 65, instead of reading the affidavit where the witness clearly mentioned the date of **May 17, 2018**, and in violation of their duty of due diligence and competence, they merely denied this fact in a motion dated **July 13, 2021**, alleging that their witness had never offered an exact date in affidavits or previous testimony, and they also denied it verbally in open court, during the criminal process the plaintiff was exposed to.

59.   Even worse, another witness with immunity, Ms. Katherine Erazo García, who was a contractor for the Telecommunications Bureau, also traveled with the plaintiff, since part of her job consisted of coordinating the complainant's participation in official events inside and outside of Puerto Rico.

60.   The contracted prosecutors were also given the evidence proving Ms. Erazo García's trip.

61.   The contracted prosecutors could very well have, as required by their duty of competence and diligence, investigate and corroborate with their other

19

witness with immunity, but they chose to continue denying that EJL had mentioned any date in his sworn statement.

62. On **July 22, 2024**, during criminal proceedings before the Caguas Court of First Instance, Prosecutor Ramón Mendoza made an initial settlement approach to the above captioned plaintiff, through Attorney, Carmen Quiñones Núñez, proposing that she plead guilty and accept an administrative fine. Attorney Quiñones Núñez informed him that **SETL** wished for the case, to proceed through the judicial process and that there was a pending complaint before the Supreme Court of Puerto Rico related to the same facts as the criminal proceedings. In response, Prosecutor Mendoza Rosario stated that he was unaware of the existence of such a complaint. However, this statement proved to be untrue, as it appears that Prosecutor Mendoza Rosario himself and Prosecutor Pabón Ortiz had sent a communication to the Supreme Court, on **May 4, 2021**, requesting information on the status of the disciplinary proceedings against the defendant then, plaintiff in the present cause of action.

63. Furthermore, during a meeting held on **August 1, 2024**, at the Office of the **Special Independent Prosecutor**, **Prosecutor Leticia Pabón Ortiz** made a **second settlement** approach to **SETL**, through **Attorney Carmen Quiñones**, again proposing that the defendant then, plead guilty and accept

an administrative fine, adding this time that the pending complaint before the Supreme Court could be withdrawn as part of the settlement. In response, **Attorney Quiñones** reaffirmed that her client wished for the case to continue its judicial course and further stated that she understood that a complaint before the Supreme Court could not be negotiated or settled.

64. After the discovery phase was completed and the trial was ready to begin, multiple postponement requests were filed by **Prosecutors Mendoza Rosario** and **Pabón Ortiz**, citing scheduling conflicts and **Mendoza Rosario's** alleged health condition. This occurred despite the fact that the trial could have commenced and continued with **Attorney Leticia Pabón Ortiz**, who had been actively involved since the investigative stage, through the determination of probable cause for arrest and the preliminary hearing. Furthermore, the Special Independent Prosecutor's Office (**PFEI**) law itself stipulates that the appointed prosecutor delegates all powers to the designated prosecutor(s), in this case, Attorney Leticia Pabón Ortiz. These delays caused unnecessary congestion in the litigation process.

65. During the trial phase, which began on **September 25, 2024**, requests for postponement based on the same scheduling conflicts by **Ramón Mendoza Rosario** and his alleged health condition continued, despite **Pabón Ortiz's** availability to continue and the request of the presiding judge herself,

causing the trial to extend until **June 27, 2025**. **Prosecutor Leticia Pabón Ortiz** was the only one who appeared on the last day of the trial, cross-examined the defense witness, and made the closing arguments, demonstrating that the various suspensions requested by **Prosecutor Mendoza** unduly delayed the proceedings, subjecting the defendant to the rigors and anguish of an unnecessary trial for nine months.

66. On the second day of the **12 day Bench trial**, the contracting prosecutors duly sworn in Ms. **María Teresa Fullana Hernández**, who was the executive assistant of the plaintiff herein, as a witness.

67. It is important to mention that during the discovery of evidence, in the criminal process, the prosecutors were provided with a copy of the report submitted by **Attorney Miriam Toledo David**, the examining officer appointed to conduct the investigation against **Attorney María Fullana Hernández**, for an anonymous complaint received alleging mistreatment of certain personnel of the Telecommunications Bureau.

68. During cross-examination, Ms. **Fullana Hernández** was questioned by the attorney for **SETL**. She was asked if the plaintiff had ever ordered an investigation against her and if she had been suspended from her job, but not from her salary, while the investigation was underway. Ms. **Fullana Hernández** responded that she had never been suspended and had never

been investigated. The prosecutors were aware of the false nature of this statement, as **SETL**'s **Attorney, Carmen Quiñones**, had provided them with a copy of the investigation report.

69.    On the fourth day of the trial, the contracting prosecutors called **Attorney Miriam Toledo David** as a witness.

70.    During cross-examination, **Attorney, Carmen Quiñones**, representing the plaintiff, questioned the witness about her duties as a contracted advisor for the Telecommunications Regulatory Board, specifically asking if her responsibilities included investigating employees. She inquired whether the witness had conducted an investigation related to **Attorney María Fullana Hernández**. The witness responded that several employees had filed a complaint, that an anonymous tip had been received, that the plaintiff had convened a meeting, and that the witness had been assigned the investigation. She stated that a report was submitted. A copy of the report was presented to the witness, which she identified, and she stated that **Attorney Fullana** resigned after the report was submitted.

71.    The testimony of the prosecution's witness, **Attorney Miriam Toledo David**, proved that witness **Attorney Fullana Hernández** had lied under oath, and both prosecutors, who already had the report, stood idly by as if nothing had happened. This omission constitutes a violation of the duty of

truthfulness that should characterize the role of a prosecutor.

72.   On the fourth day of the trial, the prosecutors called Ms. **Katherine Erazo García** as a witness. During cross-examination, **Attorney Carmen Quiñones** asked the witness if she knew why she had been granted immunity, to which she replied that she did not know. She was then asked if she had committed a crime, and she replied that she had not. Regarding this witness's testimony, the prosecutors again remained passive and took no action.

73.   During days 10, 11 and 12 of the trial, the prosecutors called the witness with immunity, **EJL**.

74.   During cross-examination, **Attorney Carmen Quiñones** asked the witness with immunity, **EJL**, if he had committed a crime to qualify for immunity. The witness answered in the negative. **Prosecutors Ramón Mendoza** and **Leticia Pabón**, objected and stated for the record that immunity was granted to their witness as a form of future protection should the witness commit a crime. This constitutes a gross violation of the duty of professional competence.

75.   The witness with immunity lied to the Court when he testified that he learned the Office of Government Ethics had concluded its investigation into the complaint filed against the plaintiff because the Director of Ethics

had made it public in the press. However, the documents presented show that when the prosecutor from the Department of Justice, investigating the complaint before the Supreme Court, asked **EJL** about the status of the complaints in the various forums, he responded to the request via email, providing the status and attaching a copy of the letter sent by the Office of Government Ethics to **EJL**'s postal address. Faced with such a response, the contracted prosecutors again stood idly by and did nothing, knowing that their witness was lying. This omission constitutes a violation of the duty of honesty and sincerity that should characterize the conduct of the public prosecutor.

76. The witness with immunity, when questioned by **Attorney Carmen Quiñones**, stated that he learned the Office of Government Ethics had referred him to the Department of Justice for perjury because the executive director had said so in the press. **Prosecutors Mendoza Rosario** and **Pabón Ortiz**, knowing their witness was lying, remained passive and took no action.

77. During cross-examination, **EJL** was questioned about the **May 17th** date he had mentioned in his sworn statement to the Department of Justice, a date that, as previously mentioned, the prosecutors had consistently denied, arguing in a motion that their witness had never provided a date. When

confronted with the sworn statement, he admitted to having said it. He lied again, as no such meeting ever took place, a fact confirmed by the contracting prosecutors, who had copies of all the evidence submitted with the **Rule 65** of **Criminal Procedure** of **Puerto Rico**, motion. This once again demonstrated their negligent conduct, attempting to secure a conviction at all costs.

78. The witness, who was granted immunity, from questioning by **Attorney Carmen Quiñones**, stated that he had never sent any communication to Mr. **Emanuel Nazario**, the director of information systems, requesting that the passwords for **Facebook**, **Twitter**, and I**nstagram** be changed so that, once he received the administrative appointment, he would not have access to the Telecommunications Bureau's accounts. When confronted with the document, he admitted that he had written and sent it. **Prosecutors Mendoza Rosario** and **Pabón Ortiz** took no action.

79. The witness with immunity also denied receiving a written reprimand from **SETL** regarding his excessive tardiness, absenteeism, failure to clock in, and leaving work without notification. When confronted with the document, he had to admit to having received it. Prosecutors **Mendoza Rosario** and **Pabón Ortiz** had the written reprimand in their possession before the charges were filed. What the prosecutors did do was call Carmen Serrano,

the executive director of the Public Services Regulatory Board, as a witness to deny that the document given to **EJL** was a disciplinary sanction. To support this claim, they presented the Telecommunications Bureau's Disciplinary Regulations, which had been repealed by Law No. 8 of 2017, the Law for the Administration and Transformation of Human Resources of the Government of Puerto Rico. This law, specifically and contrary to the repealed practice, establishes in its Article 3, that the disciplinary sanction to be applied will consist of written reprimands, oral admonitions, suspension from employment and salary, or dismissal. Their lack of diligence led them to the extreme of using a regulation knowing that it had been repealed and of having yet another witness lie.

80. Despite having been requested as part of discovery under Rule 95 of Criminal Procedure of Puerto Rico, supra, the list of interviewed witnesses was also breached by these two contracted prosecutors, who failed to fulfill their duty by concealing that, prior to the filing of charges, **Ramón Mendoza** interviewed Mr. **Ángel Laureano** and never notified the defense of such, as required by Law. As is well known, it is mandatory, as part of the due process guarantees, to provide the accused with the name of each and every person interviewed by the prosecutors, regardless of whether or not they will be used as prosecution witnesses.

27

81. After more than three (3) years of postponements of hearings and suspensions of the trial on its merits, and having in her possession all the evidence submitted prior to the filing of charges and that presented under Rule 65, **supra**, in a meeting held between **Prosecutor Leticia Pabón Ortiz** and **Attorney Carmen Quiñones**, **Pabón Ortiz** told **Quiñones** that the witness with immunity, **EJL**, had told her he was tired of the case. Upon hearing **EJL**'s statement, Pabón Ortiz told **EJL** that she would offer the plaintiff the option of paying an administrative fine to end the case. Attorney Quiñones reminded her that a complaint against the plaintiff was pending before the Supreme Court. Pabón Ortiz told Quiñones that she would speak with **EJL** so that he would withdraw the complaint. **Quiñones** reminded **Pabón Ortiz** that this could not be done. **SETL**, once again stated that she would not accept the refered offer.

82. All of the above, knowing that any type of offer or negotiation is improper when complaints against members of the profession, such as one pending then against the plaintiff, before the Supreme Court of Puerto Rico.

83. As stated in the preceding paragraphs, the contracted prosecutors named in this complaint were aware, prior to the filing of charges, of the reasons for the immunity witness' actions. They were provided with all the supporting documents. They had a copy of the written reprimand and a copy of the

complaint filed with the police by the plaintiff, in her capacity as president of the Telecommunications Regulatory Board. Said complaint, filed on **September 17, 2019**, concerned the unauthorized access to and appropriation of the Agency's official Facebook account. The Agency's policy was followed. Had they conducted their investigative work diligently and responsibly, and had analyzed the time line between the date **EJL** filed the complaint with the Supreme Court (**October 18, 2019**) and the date mentioned by the witness with immunity in his sworn statement to the Department of Justice (**May 17, 2018**), they would have seen that approximately 17 months had elapsed between that date and the filing of the complaint. However, if they had compared **October 18, 2019**, with the date the plaintiff was compelled to file the complaint with the Puerto Rico Police Department, **September 17, 2019**, they would have noticed that only a month had passed. This would, at the very least, raise suspicions for anyone prudent, reasonable, and possessing the investigative skills they are presumed to have.

84. We respectfully understand that individuals with the training and experience of these two jurists should have investigated and evaluated the situation prudently, intelligently, and responsibly, at the very least leading them to question their witness, who had immunity, about the witness'

motives. It was their duty to seek the truth and their ethical obligation to ensure that justice was served.

85. The contracted **Prosecutors Mendoza Rosario** and **Pabón Ortiz**, in the plaintiff's case, as in the case of so many others, had, have, and will have the precious right to freedom in their hands. In **SETL** case, it would have meant eight years in prison, without the possibility of probation. The guiding principle must always be the quest for the truth.

86. Unfortunately, as can be clearly deduced from everything expressed here and clearly supported by the evidence in the court file, the prosecutors were seeking a conviction at all costs.

87. The defendants, in their personal capacity are liable to the plaintiff for the negligent and intentional manner in which they carried out their investigation, having finally indicted her and subject to a **Bench Trial**, which finally resulted in the acquittal of all of the charges filed against **SETL**.

88. The described aforementioned acts engaged by the defendants constituted an excessive use of force in violation the Civil Rights Act (42 U.S.C. 1983 and 1988) and the Fourth and Fourteenth Amendments to the United States Constitution.

89. The acts and conduct of the Defendants named herein constitute a violation

of Article II, Section 1, 7 and 10 of the Constitution of Puerto Rico and 1 LPRA, Section 10 and 11. This Court has pendent jurisdiction to hear and adjudicate these claims.

90.   The acts and conduct of the Defendants named herein constitute a violation of Article 1802 & 1803 of the Civil Code of the Laws of the Commonwealth of Puerto Rico (31 LPRA §§ 5141 and 5142). This Court has supplementary jurisdiction to hear and adjudicate these claims.

91.   The acts and conduct of the Defendants named herein constitute an infliction of emotional distress and/or gross negligence causing injury to the Plaintiff, actionable under laws of the Commonwealth of Puerto Rico. This Court may exercise its supplementary jurisdiction to hear and adjudicate these claims.

**WHEREFORE**, Plaintiff requests the following relief, jointly and severally, against Defendants:

1.   Compensatory damages for her physical and mental pain suffering    in excess of **$7,000,000**;

2.   Punitive damages against the individual defendants, in excess of **$3,000,000**;

3.   Special damages, that is loss of wages/earnings in excess of the amount of **$500,000**;

4.      Reasonable Attorney's fees and costs, pursuant to **42 U.S.C. § 1988;**

5.      Damages for deprivation of liberty, emotional distress and damages

 to her reputation;

6.      Such other or further relief as this Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of June of the year 2026.

By:  /**s**/ **PETER JOHN PORRATA**
              **#128901**

Law Offices of
**PETER JOHN PORRATA**
POB 3874
Güaynabo, PR  00970-3874
**peterjohnporrata@gmail.com**
T: 407.953.9888

32